# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 15-0166V
### Filed: August 12, 2015
Unpublished

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| JESSICA CREFASI, | \* |
| | \* |
| Petitioner, | \* |
| | \* |
| v. | \* |
| | \* |
| | \* |
| SECRETARY OF HEALTH | \* |
| AND HUMAN SERVICES, | \* |
| | \* |
| Respondent. | \* |

Ruling on Entitlement; Concession; Influenza ("flu") Vaccine; Shoulder Injury Related to Vaccine Administration ("SIRVA"); Damages Decision Based on Proffer; Special Processing Unit ("SPU")

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*David J. Schexnaydre, Schexnaydre Law Firm, Mandeville, LA, for petitioner.*
*Althea Davis, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION[1]

**Vowell**, Chief Special Master:

On February 23, 2015, Jessica Crefasi filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq*,[2] [the "Vaccine Act" or "Program"].  The petition alleges that as a result of an influenza ("flu") vaccination on September 25, 2013, petitioner suffered a shoulder injury related to vaccine administration ("SIRVA").  The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

On August 12, 2015, respondent filed her Rule 4(c) report ["Resp. Report"], in which she concedes that petitioner is entitled to compensation in this case.  Resp. Report at 6.  Specifically, respondent "has concluded that petitioner's alleged injury is

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

consistent with [SIRVA], and that it was caused-in-fact by the flu vaccination she received on September 25, 2013."  *Id.*   Respondent stated that "based on the record as it now stands, petitioner has satisfied all legal prerequisites for compensation under the [Vaccine] Act."  *Id.*

**In view of respondent's concession and the evidence before me, I find that petitioner is entitled to compensation.**

Additionally, respondent incorporated a proffer on award of compensation ("Proffer") into her Rule 4(c) report detailing compensation for all elements of compensation to which petitioner would be entitled under §15(a).  According to respondent's Proffer, petitioner agrees to the proposed award of compensation.

Pursuant to the terms stated in the attached Proffer, **I award petitioner a lump sum payment of $50,000.00 in the form of a check payable to petitioner.**

This amount represents compensation for all damages that would be available under §15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[3]

**s/Denise K. Vowell**
Denise K. Vowell
Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**OFFICE OF SPECIAL MASTERS**

| | | |
|---|---|---|
| JESSICA CREFASI, | ) | |
| | ) | |
| Petitioner, | ) | No. 15-166V |
| | ) | Chief Special Master |
| v. | ) | Denise Vowell |
| | ) | |
| SECRETARY OF HEALTH | ) | |
| AND HUMAN SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## RESPONDENT'S RULE 4(c) REPORT AND PROFFER ON DAMAGES

On February 23, 2015, Jessica Crefasi ("petitioner") filed a petition for

compensation ("Petition") under the National Childhood Vaccine Injury Act of 1986, 42

U.S.C. §§ 300aa-1 to -34, as amended.  Petitioner alleges that, as a result of receiving the

influenza ("flu") vaccine on September 25, 2013, she suffered a shoulder injury that was

caused-in-fact by her vaccination.  Petition at ¶¶ 3, 4.

In accordance with the Rules of the United States Court of Federal Claims,

Appendix B, Vaccine Rule 4(c), and the special master's August 3, 2015 Order, the

Secretary of Health and Human Services ("respondent"), submits the following as her

responsive report.

The facts of this case, as reflected in the petition and accompanying documents,

were reviewed by medical personnel of the Division of Injury Compensation Programs,

Department of Health and Human Services ("DICP").  Their opinion is that this case is

appropriate for compensation under the terms of the Act.

1

**FACTS**

At the time of vaccination, petitioner was 25-years-old with a history of anxiety, hypoglycemia, hyperlipidemia, and pseudo arthrosis of the left clavicle that was repaired surgically at five years of age.  Pet. Ex. 4 at 47, 54; Pet. Ex. 9 at 13, 14.

During a June 21, 2013 physical exam by her primary care physician, Dr. William Rolfsen, M.D., petitioner reported experiencing muscle fatigue, tremors, and weakness, primarily in the lower extremities after a May 2013 automobile accident.  Pet. Ex. 4 at 55. During a physical exam on September 24, 2013, petitioner reported having lingering muscle tremors and being unable to lift weights without feeling faint and "shaky" while exercising at the gym.  Pet. Ex. 4 at 50.  Petitioner was diagnosed with a urinary tract infection and her exam was otherwise normal.  *Id*. at 50-51.

On September 25, 2013, petitioner received a flu shot in her left deltoid at the dermatology office where she was employed as an accountant.  Pet. Ex. 1 at 1.

On October 18, 2013, petitioner presented to orthopedist Dr. Ricardo Rodriguez, M.D., for evaluation of persistent left shoulder pain after receiving a flu vaccination in her left shoulder on September 25th.  Pet. Ex. 5 at 4.  On physical exam, petitioner had good range of motion, good strength of her rotator cuff, and mild shoulder impingement. *Id*.  Dr. Rodriguez noted petitioner had a 3+ sulcus, and translated her anterior inferiorly out of the arm socket, a condition which petitioner described as chronic in nature.  *Id*. Dr. Rodriguez noted that petitioner likely had some post-injection "inflammation from her shot" that would "[h]opefully...go away" and he prescribed Medrol to treat the inflammation.  *Id.*

Upon referral from Dr. Rolfsen, petitioner presented to a neurologist Dr. Linda Lebourgeois, M.D., on October 28, 2013, with complaints of feeling jittery, shaking, and experiencing light-headedness daily since her May 2013 auto accident.  Pet. Ex. 4 at 47. After a normal exam, Dr. Lebourgeois ordered lab tests to rule out "myopathy, electrolyte disturbance, myasthenia gravis, [and a] thyroid condition."  *Id*. at 48.

On November 4, 2013, petitioner returned to Dr. Rodriguez for ongoing arm discomfort that began after receiving a flu shot.  Pet. Ex. 9 at 10.  On exam, petitioner was found to have a good range of motion, a 3+ sulcus, and good arm and scapular stabilizer strength with some looseness of her joint.  *Id*.  Petitioner was referred to physical therapy "to give this a little more time" before ordering an MRI of the shoulder. *Id*.

On November 26, 2013, petitioner returned to Dr. Lebourgeois with complaints of feeling shaky, particularly in her legs, after lifting heavy weights in the gym.  Pet. Ex. 4 at 42.  After a normal exam, Dr. Lebourgeois ordered a nerve conduction study ("NCS") and electromyogram ("EMG") of the lower extremities.  *Id*. at 44.  On December 3, 2013, petitioner's NCS/EMG of the lower extremities was normal with no evidence of peripheral neuropathy, myopathy, or lumbosacral radiculopathy.  Pet. Ex. 4 at 41.  On the same day, petitioner was evaluated by a physical therapist at Women's Hospital Therapy Center for "left shoulder pain and adhesive capsulitis."  Pet. Ex. 5 at 10.  Petitioner complained of having intermittent left shoulder pain, particularly when she reached for things overhead, since her September 2013 flu shot.  *Id*.  Petitioner reported no pain at rest but mild tenderness on palpation, and had "decreased left shoulder strength to 4+/5 internal rotation, 4/5 external rotation", and a positive sulcus sign.  Pet. Ex. 5 at 10.

3

Petitioner was scheduled to see the physical therapist twice a week over four weeks of treatment. *Id.*

On January 6, 2014, petitioner presented to a physical therapist for her tenth physical therapy session. Pet. Ex. 6 at 43. Petitioner stated, "I still have some pain with certain movements, but overall [my shoulder is] better." *Id.* at 39. Petitioner's pain level was assessed at 2/10 (range 0-10) and her shoulder range of motion was within normal limits before she was discharged from physical therapy. *Id.* at 41, 43.

On January 20, 2014, petitioner returned to Dr. Rodriguez for continued left shoulder pain. Pet. Ex. 5 at 2. Dr. Rodriguez noted "problems in [petitioner's] shoulder began after she had [a] flu shot" and he found no other cause of her symptoms. *Id.* On exam, petitioner had general laxity of both shoulders, a positive result from an O'Brien's test of the left arm, and tenderness over her biceps tendon. *Id.* Dr. Rodriguez noted a possible labral tear and planned a magnetic resonance imaging ("MRI") arthrogram of the left shoulder. *Id.* On February 4, 2014, petitioner's MRI revealed "mild increased marrow signal posterior greater tuberosity which extends into the cervical humeral head/neck. [These] [f]indings [are] suspicious for a mild bone contusion." Pet. Ex. 5 at 5. Otherwise, the MRI was normal. *Id.*

Two months later, on April 3, 2014, petitioner presented to Women's Hospital Therapy Center for muscle fatigue and tremors following strenuous exercise. Pet. Ex. 6 at 7. Petitioner reported difficulty using her full body strength or muscle mass for intense exercise and her exercise tolerance had reached a plateau since September 2013. *Id.* On exam, petitioner's pain was rated at 0/10 at rest (range of 0-10) with pain upon external rotation of her left shoulder and tenderness to palpitation on the left supraspinatus tendon

4

while her range of motion was normal.  *Id*. at 15.  After six physical therapy sessions over two weeks, petitioner reported less muscle fatigue and tremors after exercise during her last evaluation on April 24, 2014.  *Id*. at 19.

On May 4, 2014, petitioner presented to orthopedist Dr. Jason Rolling, M.D., for a second opinion regarding her left-sided shoulder pain.  Pet. Ex. 7 at 1.  On exam, petitioner had tenderness to palpitation over the biceps, a slight decreased range of motion, and significant apprehension and pain during an apprehension test of her shoulder.  *Id*.  Petitioner's shoulder X-rays were normal with no obvious bone fracture or abnormalities.  *Id*.  After reviewing the results of the previous MRI, Dr. Rolling tentatively diagnosed petitioner with anterior-inferior instability in the posterior area, noting left-sided weakness possibly from her auto accident "and some weakness which caused her to decompensate" leading to "symptomology of instability."  *Id*. at 1-2.  Dr. Rolling and petitioner discussed the use of taping, compressive shirts, and devices, steroid injections, and shoulder joint strengthening protocols as therapeutic measures to help her regain stability.  *Id*.

A month later, petitioner presented to Next Level Physical Therapy to begin a new physical therapy regimen for chronic left shoulder pain.  Pet. Ex. 8 at 20.  On exam, petitioner had pain during active forward flexion/abduction, and limited range of motion minimally in horizontal adduction.  *Id*. at 22.  Gross muscle strength tests of petitioner's left shoulder were noted at 4 within a range of 0 to 5.  *Id*.  Petitioner's exam also showed positive results for both "Hawkins" impingement and "empty can" rotator cuff tests as well as moderate laxity in her left shoulder.  *Id*. at 23.  Petitioner was scheduled for physical therapy three times a week.  *Id*. at 24.

Petitioner presented to Dr. Rolling for a follow up consultation on July 17, 2014.

Pet. Ex. 7 at 3.  Petitioner opted out of treatment with steroid injections, preferring

another month of physical therapy before returning for a six week follow-up visit with

Dr. Rolling.  *Id*.  Petitioner also indicated that she would have difficulty attending

physical therapy due to the distance required to travel to sessions.  *Id*.  Dr. Rolling

assessed petitioner's muscle strength as "[o]verall...slightly better."  *Id*.

After twenty physical therapy sessions between August 6 and December 31, 2014,

petitioner reported significant improvement regarding her shoulder pain.  Pet. Ex. 16 at 2-

20.  Over the course of her final four physical therapy visits in December 2014, petitioner

reported having some occasional soreness but otherwise the condition of her left shoulder

was "good" with no "real pain" unless she "sleeps on it wrong."  *Id*. at 15-18.

## <u>ANALYSIS</u>

DICP has reviewed the petition and medical records filed in the case and has

concluded that compensation is appropriate.  DICP has concluded that petitioner's alleged

injury is consistent with shoulder injury related to vaccine administration (SIRVA), and

that it was caused-in-fact by the flu vaccine she received on September 25, 2013.  DICP

did not identify any other causes for petitioner's SIRVA, and petitioner's records

demonstrate that she has suffered the sequela of her injury for more than six months.

Based on the medical records outlined above, petitioner has met the statutory

requirements for entitlement to compensation.  <u>See </u>42 U.S.C. § 300aa-13(a)(1)(B); 42

U.S.C. § 300aa-11(c)(1)(D).  Therefore, based on the record as it now stands, petitioner

has satisfied all legal prerequisites for compensation under the Act.

## PROFFER ON AWARD OF COMPENSATION

**I.     Items of Compensation**

Based upon the evidence of record, respondent proffers that petitioner should be awarded $50,000.00, which represents all elements of compensation to which petitioner would be entitled under 42 U.S.C. § 300aa-15(a).  Petitioner agrees.

**II.    Form of the Award**

Respondent recommends that the compensation provided to petitioner should be made through a lump sum payment of **$50,000.00** in the form of a check payable to petitioner.[1]  Petitioner agrees.

Petitioner is a competent adult.  Evidence of guardianship is not required in this case.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

RUPA BHATTACHARYYA
Director
Torts Branch, Civil Division

VINCENT J. MATANOSKI
Deputy Director
Torts Branch, Civil Division

MICHAEL P. MILMOE
Senior Trial Counsel
Torts Branch, Civil Division

---

[1]  Should petitioner die prior to entry of judgment, the parties reserve the right to move the Court for appropriate relief.  In particular, respondent would oppose any award for future medical expenses, future pain and suffering, and future lost wages.

*/s/Althea W. Davis*
ALTHEA WALKER DAVIS
Senior Trial Counsel
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box l46
Benjamin Franklin Station
Washington, D.C.  20044-0146
Direct dial: (202) 616-0515
Fax: (202) 616-4310

Dated: August 12, 2015